UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

Civil Action No.

| | |
|---|---|
| BETH TANNER, MELISSA BARBOUR, and LUCAS MILLER,<br><br>Plaintiffs,<br><br>v.<br><br>ROY COOPER, in his official capacity as Governor of North Carolina, DAMON CIRCOSTA, in his official capacity as Chair of the North Carolina State Board of Elections, STELLA ANDERSON, in her official capacity as a member of the North Carolina State Board of Elections, JEFF CARMON, III, in his official capacity as a member of the North Carolina State Board of Elections, and KAREN BRINSON BELL, in her official capacity as the Executive Director of the North Carolina State Board of Elections,<br><br>Defendants. | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

## INTRODUCTION

1. **Basic nature of action.** Plaintiffs come before the Court seeking relief

pursuant to 42 U.S.C. § 1983 from a December 21, 2020 Order of the North Carolina

Board of Elections ("State Board") purporting to give the Governor of North Carolina authority to fill a newly-created judgeship in North Carolina Judicial District 10-F (Seat 2) by appointment in derogation of both recent election results and the Plaintiffs' Constitutional and statutory rights.

2. **The legislature new seats for election.** Session law 2020-84, ratified July 1, 2020, created two new district court seats in Wake County District 10-F (Seat 2 and Seat 3) to become extant January 1, 2021. The law mandated an election for the new seats be held during the November 3, 2020 general election. The election went forward and ballots in District 10-F (seat 2) presented two candidates to voters: Tim Gunther and lead Plaintiff Beth Tanner.

3. **One of two candidates for 10-F (Seat 2) was never eligible.** On October 29, 2020, District 10-F voter Joan Erwin filed a protest of Gunther's candidacy with the Wake County Board of Elections ("Wake Board") asserting Gunther was not a valid resident of the district. The Wake Board of Elections did not hear the complaint prior to November 3, 2020. Following the November 3, 2020 general election, initial results showed Gunther garnered roughly 56% of the vote. The Wake Board finally heard Erwin's protest on November 18, 2020. On November 19, 2020 the Wake Board entered an Order finding Gunther did not live in the relevant district and was therefore ineligible to be certified as the winner. *See* Appx. C, Wake Board Order. The evidence supporting the Board's decision was, in part, Gunther's own admission through his attorney that he had never resided in District 10F and did not currently reside there. *Id.*

4. **Wake Board defers to State Board.** The Wake Board Order concluded by referring the matter to the North Carolina Board of Elections ("State Board") pursuant to N.C. Gen. Stat. § 163-182.10(d)(2)(e). This subsection provides for a county board to find violations of election law sufficiently serious to cast doubt on the apparent results of the election. *Id.*

5. **State Board Authority.** North Carolina election law provides for administrative action in many scenarios, such as when a candidate dies while on the ballot, *see* N.C. Gen. Stat. 163-112*,* candidate withdrawal, *see* N.C. Gen. Stat. 163-113, and even an electoral tie, *see* N.C. Gen. Stat. § 163-182.8. There is not specific state statutory or constitutional guidance related to this circumstance: when an illegal candidate is disqualified through a mid-election protest and post-election disqualification.

Some provisions, however, are clear. The State Board holds exclusive authority to issue certificates of election for all district court judgeships.[1] *See* N.C. Gen. Stat. 163-182.4(b)(4). Where four members of the State Board agree, it may also order new elections where improprieties taint the results of the entire election so as to cast doubt on its fairness. *See* N.C. Gen. Stat. 163-182.13(a)(4). There is no provision of law which would suggest the State Board can expand the powers of the Governor and thereby avoid resolving an election irregularity.

6. **Tanner's argument to State Board.** Tanner, through counsel, appeared before the State Board on December 18, 2020. On brief and in argument,

---

[1] No certificate or other declaration of election was ever awarded Gunther due to his disqualification.

she submitted she should be certified as the winner because she effectively ran unopposed since Gunther's candidacy was void *ab initio*. *See* Tanner Brief, Appx. B. She also addressed statutory provisions for a new election, but suggested that was unnecessary because her first argument was meritorious. *Id.* She rejected any idea the matter was appropriate for Gubernatorial appointment. *Id.*

7. **State Board Orders Gubernatorial appointment.** The State Board entered a December 21, 2020 order rejecting Tanner's arguments and assigning the seat to the Governor for appointment. *See* State Board Order, Appx. A at 3. The Order cited N.C. Gen. Stat. § 128-7.1 as its basis for Gubernatorial appointment.

8. **The State Board Order is premised upon an inapplicable statute.** Paragraph 9 of the State Board's December 21 Order recites the text of N.C. Gen. Stat. § 128-7.1 accurately: "[i]f any person who has been elected to public office (i) dies or becomes disqualified for the office before qualifying for the office, or (ii) for any reason refuses to qualify for the office, the office shall be declared vacant." Paragraph 9 of the Order asserts this provision "provides the statutory mechanism for filling a vacancy when a candidate in a general election dies or becomes disqualified after Election Day."

Section 128-7.1 has no application to this scenario. The plain text of Section 128-7.1 has an initial threshold for application: *if any person has been elected to public office.* Here, Gunther was not elected. He was never qualified to run in District 10-F at any stage of the election cycle. He was disqualified by the Wake

Board and the State Board never granted him a certificate of election. This provision has no application to the scenario at hand.

Paragraph 11 of the Order further provides "[b]ecause Gunther was disqualified after Election Day, the vacancy should be filled pursuant to G.S. § 128-7.1." Plaintiffs submit this is another misreading and misapplication of Section 128-7.1. Gunther could never have been elected. His initial certification to stand for election by the County Board based on his qualifications, including proper residency, were in essence withdrawn by the County Board. In fact, had the Board heard the case prior to the election, Gunther would have been disqualified and would have never been elected no matter the amount of votes he received. There is no record Gunther was ever qualified to stand for election in District 10-F at any point in the election cycle at issue. His candidacy was void *ab initio.* The State Board cannot rely upon this statute to declare vacant a seat that had never been filled and was not yet extant.

9. **The Wake Bar "straw poll" is scheduled and a pre-requisite to Gubernatorial action.** N.C. Gen. Stat. § 7A-142 makes provisions for Gubernatorial appointment to fill state district court vacancies. However, that statute quite specifically provides that vacancies are only to be filled for an **unexpired term.** When the State Board made this order, the term for this new seat had not even started. Furthermore, Gunther was disqualified before the election was even certified and has never taken the Oath of Office. There is no unexpired term here. Nonetheless, the process being followed requires the district

5

Bar to hold a straw poll and forward the names of the top five vote-getters to the Governor[2]. After giving "due consideration" to that list, the Governor may fill the vacancy with anyone from the list or others not appearing on the list. The 10th Judicial District Bar, on January 1, 2021, announced an intent to hold such an election on January 26, 2021.

## JURISDICTION AND VENUE

10. This Court has jurisdiction pursuant to 18 U.S.C. §§ 1331, 1343 and 42 U.S.C. § 1983 because this action arises under the Constitution of the United States. The Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331, 1343, 1357 and 42 U.S.C. § 1983.

11. Venue is appropriate in this district under 28 U.S.C. § 1391(b) and under Local Rule 40.1(c)(1) because all three Plaintiffs are residents and voters of Wake County (District 10-F), within the confines of the Eastern District's Western Division. Defendants' official offices are also in Wake County, which is in the Eastern District's Western Division.

## PARTIES

12. Plaintiff Beth Tanner ran as a candidate for election in Judicial District 10-F (seat 2) and is also a registered voter in the district.

13. Plaintiff Melissa Barbour is a registered voter in District 10-F.

14. Plaintiff Lucas Miller is a registered voter in District 10-F.

---

[2] This creates an unseemly situation as applied to this case: disqualified candidate Gunter, a member of the 10th Judicial District Bar, would be eligible to vote in the Bar straw poll, but not layperson voters in District 10-F originally granted a right to elect the new judge by the legislature, such as two of the plaintiffs before the Court.

15. Defendant Roy Cooper is the Governor of North Carolina ostensibly vested with appointment authority in this matter. He is named in his official capacity.

16. Defendant Damon Circosta is the Chair of the North Carolina State Board of Elections, which is the agency that is charged with administration of North Carolina's election laws and with the "general supervision over the primaries and elections in the State." N. C. Gen. Stat. § 163-22(a). He is named in his official capacity.

17. Defendant Stella Anderson is a member of the North Carolina State Board of Elections. She is named in her official capacity.

18. Defendant Jeff Carmon, III, is a member of the North Carolina State Board of Elections. He is named in his official capacity.

19. Defendant Karen Brinson Bell is the Executive Director of the North Carolina State Board of Elections. She is named in her official capacity.

## CLAIMS FOR RELIEF

### COUNT I

### Violation of the Due Process Clause of the United States Constitution; 42 U.S.C. § 1983

20. The facts alleged in the foregoing paragraphs are incorporated by reference.

21. The Due Process Clause of the Fourteenth Amendment protects against disenfranchisement of a state electorate in violation of state election law. *Duncan v.*

*Poythress,* 657 f.2d 691, 692 (5th Cir. 1981). Indeed, "it is fundamentally unfair and constitutionally impermissible for public officials to disenfranchise voters in violation of state law so they may fill the seats of government through the power of appointment." *Id.* at 704. "*Duncan* forbids state officials to circumvent state laws that require them to fill offices by elections." *Spinka v. Bell,* 750 F. Supp. 306, 310 (NDIL 1990). "[W]hen a state provides that an office will be filled by holding elections, the state creates a right to vote that the Constitution protects." *Id.*

22. In its December 21 Order, the State Board assigned the District 10-F (Seat 2) to the Governor for appointment in violation of North Carolina Election law. Session Law 2020-84 created the seat at issue as well as others; the others, including a District 10-F sibling, were filled by election as mandated by the new law. The December 21 Order attempts to aggrandize the executive at the cost of the people by defining a seat that did not yet exist as vacant.

23. Left unremedied, the Governor and State Board will continue to act under color of state law to violate Plaintiffs' Due Process Rights.

24. Plaintiffs have no adequate remedy at law, and the December 21 Order will continue to inflict serious and irreparable harm to the constitutional right to participate in this particular election unless the purported appointment authority is enjoined.

# COUNT II

## Violation of the Equal Protection Clause of the United States Constitution; 42 U.S.C. § 1983

25. The facts alleged in the foregoing paragraphs are incorporated by reference.

26. The Equal Protection Clause of the Fourteenth Amendment provides that state laws may not "deny to any person within" the state's "jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1.

27. As this Court wrote in its October 3, 2020 *Moore et al. v. Circosta et al.* (EDNC 5:20CV507-D) Order, Federal courts follow the "*Reynolds-Bush*[3]" framework to analyze voter's rights under the Equal Protection Clause. Order at 13. These include (1) debasement or dilution of votes and (2) arbitrary or disparate treatment of voters. *Id.*

28. Indeed, the Equal Protection Clause ensures that voters may "participate in" elections "on an equal basis with other citizens." *Dunn v. Blumstein*, 405 U.S. 330, 336 (1972). "[A] State may not, by later arbitrary and disparate treatment, value one person's vote over that of another." *Bush*, 531 U.S. at 104–05.

29. The State Board's December 21 Order was the ultimate act of electoral dilution in that it purports to wholly obviate a statutorily-mandated election. The December 21 Order is also arbitrary in that it relies upon a statute that is facially inapplicable.

---

[3] *See Reynolds v. Simms,* 77 U.S. 533 (1964); *see also Bush v. Gore,* 531 U.S. 98 (2000).

30. Given the pendency of a Wake County Bar straw poll to educate the Governor's appointment decision, it is abundantly clear the State Board and the Governor have and will continue to act under color of state law to violate Plaintiffs' rights under the Equal Protection Clause.

31. Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their Constitutional right to equal protection of the laws and to participate in a District 10-F (Seat 2) election on an equal basis unless the Governor and the Board are enjoined from enforcing the December 21 Order.

**PRAYER FOR RELIEF**

Plaintiffs respectfully request that:

(a) The Court grant a declaratory judgment under 28 U.S.C. § 2201 that the State Board's December 21, 2020 Order regarding Judicial District 10-F (Seat 2) violates the Due Process Clause and is invalid;

(b) The Court grant a declaratory judgment under 28 U.S.C. § 2201 that the State Board's December 21, 2020 Order regarding Judicial District 10-F (Seat 2) violates the Equal Protection Clause and is invalid;

(c) The Court enter a preliminary and a permanent injunction barring Defendant Cooper from appointing anyone to the newly-created District 10-F (Seat 2) position for the appropriate period of time;

(d) The Court Order the State Board (and its subordinate in Wake County) to stage a new election for District 10-F (Seat 2) with all deliberate speed.

(e) The Court award Plaintiffs their reasonable costs and attorneys' fees under 42 U.S.C. § 1988; and

(f) The Court grant Plaintiffs such other and further relief as may be just and equitable.

This the 12th day of January, 2021.

/s/ Joshua Howard
Joshua Howard
NC Bar No. 26902
Gammon, Howard & Zeszotarski, PLLC
115 ½ West Morgan Street
Raleigh, NC 27601
(919) 521-5878
Fax: (919) 882-1898
jhoward@ghz-law.com
Counsel for Defendant
Retained

# CERTIFICATE OF SERVICE

I hereby certify that I have this day served a copy of the foregoing COMPLAINT through email, as follows:

Terence Steed
Special Deputy Attorney General
North Carolina Department of Justice
Special Litigation Section
tsteed@ncdoj.gov

Katelyn Love
General Counsel NCSBE
114 W. Edenton St.
Raleigh, NC 27603
Katelyn.Love@ncsbe.gov

This the 12th day of January, 2021.

/s/ Joshua Howard
Counsel for Defendant
Retained