BEFORE THE NORTH CAROLINA BOARD OF ELECTIONS

|  |  |  |
|---|---|---|
| In Re: Protest of Joan Erwin | ) ) ) ) ) ) ) ) | Memorandum of Judicial District 10-F Candidate Beth Tanner |

Beth Tanner, candidate for North Carolina District Judge in Judicial District 10-F (Seat 2) respectfully requests the North Carolina Board of Elections ("State Board") affirm the 19 November 2020 Order of the Wake County Board of Elections ("Wake Board") in the above-captioned matter and certify Tanner as the winner of the relevant election.

## PROCEDURAL POSTURE

Session law 2020-84, ratified July 1, 2020, created a new Wake County district court seat to become extant January 1, 2021. The law mandated an election for the new seat be held during the November 3, 2020 general election. Ballots in District 10-F (seat 2) presented two candidates to voters: Tim Gunther and Beth Tanner. *See* Appx. A, (Sample Ballot B0038).

On October 29, 2020, District 10-F voter Joan Erwin filed a protest of Gunther's candidacy with the Wake County Board of Elections asserting Gunther was not a valid resident of the district. Following the November 3, 2020 general election initial results showed Gunther won roughly 56% of the vote. The Wake Board heard Erwin's protest on November 18, 2020. On November 19, 2020 the Wake Board entered an Order finding Gunther did not live in the relevant district and was therefore ineligible to be certified as the winner. *See* Appx. B, Wake Board Order.

The Wake Board Order concludes by referring the matter to the State Board pursuant to N.C. Gen. Stat. § 163-182.10(d)(2)(e). This subsection provides for a county board to find violations of election law sufficiently serious to cast doubt on the apparent results of the election. *Id*.

The Wake Board Order did not specify or recommend which of four numbered subsections of 163-182.10(d)(2)(e) apply. Subsections 1 through 4 of that statute provide:

> 1. That the vote total as stated in the precinct return or result of the canvass be corrected and new results declared.
> 2. That votes be recounted.

> 3. That the protest and the county board's decision be sent to the State Board for action by it.
> 4. Any other action within the authority of the county board.

*Id.* The State Board holds exclusive authority to issue certificates of election for all district court judgeships. *See* N.C. Gen. Stat. 163-182.4(b)(4). That is simply the normal order of business in any judicial election. Here, the Wake Board confirmed Gunther was not properly on the ballot. Now, the State Board may certify the election given the facts as outlined by the Wake County Board of Elections related to Gunther's residency. Where four members of the State Board agree, it may also order new elections where improprieties taint the results of the entire election so as to cast doubt on its fairness. *See* N.C. Gen. Stat. 163-182.13(a)(4).

## ARGUMENT

**1. Tanner did not finish second; she ran unopposed and should be certified as the winner.** While this matter is unusual, it is not entirely unprecedented. In 1994, a North Carolina attorney ran for a district court judge seat in District 22 when he in fact lived in another district. *See* Appx. C (Bar Reprimand) at 1-2. While he prevailed in the election, he was never sworn in and a court declared his

3

candidacy "void *ab initio*." *Id* at 2. He was later reprimanded by the State Bar and, upon information and belief, charged with criminal acts for false assertions in his candidate filing. *Id*. at 1-3.

The Gunther matter before this Board is quite similar: his candidacy was void *ab initio*. Beth Tanner was the only qualified candidate on the ballot and effectively ran unopposed. District judge seats often present only one candidate as occurred in this very same election for its sibling in District 10-F (Seat 3). *See* Appx. A. In fact, the State Board's election results dashboard reflects every other Wake County Superior and District Court seat presented only one candidate for election.

Given the Wake Board's findings of fact and conclusions of law, this Board can and should exercise its statutory authority under 163-182.10(d)(2)(e)(1) to correct the error of Gunther's void candidacy and declare Tanner the resulting winner.

**2. A new election is not necessary.** N.C. Gen. Stat. § 163-182.13 provides for new elections (upon a vote of four State Board members) in four instances. Two focus on participation of ineligible voters or voter suppression. *See* Subsections (1) and (2). Only

4

subsections (3) and (4) are remotely applicable here: where irregularities affected a sufficient number of votes to change the outcome or they taint the results so as to cast doubt on the fairness of the election.

The gravamen of the new election provisions are about fairness and confidence among voters. Surely, had Gunther not been erroneously included on the 10-F (Seat 2) ballot then he would not have won any votes; yet it would not change the outcome where he is wholly ineligible to take office in the first place. Furthermore, there is nothing about certifying the only valid candidate on the ballot that casts doubt on the fairness of the election. Instead, where Gunther will not be heard to contest certifying Tanner then the State Board's authority to use its Section 182.10(d)(2)(e)(1) powers is at its zenith and the most appropriate resolution.

**3. No resolution of this matter presents a vacancy to be filled by Executive authority.** Session Law 2020-84 created this seat to become extant on January 1, 2021. The law mandated it be filled by the November 3, 2020 general election. *Id.* Any alternative resolution

5

vitiates the obvious intent of the statute and deprives the voters of District 10-F of their statutory right to fill the seat.

Furthermore, the filling of vacancies for district court seats is governed by N.C. Gen. Stat. § 163-9. Subsection (d) provides "[v]acancies in the office of district judge *which occur before the expiration of a term* shall not be filled by election" (emphasis supplied) but rather through a Bar nomination process and appointment by the Governor as provided in N.C. Gen. Stat. § 7A-142. Here, the term has not even started because by statute the seat is not open until January 2021. *See* Session Law 2020-84, subsections 2(b)(2) and 2(c). Furthermore, no person has been sworn into the office. No person has ever taken the oath for District Court Judge 10F, Seat 2. Therefore, there is no reading of the law which would define Gunther's disqualification as a vacancy subject to the Governor's jurisdiction to appoint. Any reading that an election irregularity can result in an appointment by the Governor would render elections and the laws that govern those elections essentially useless. Indeed, it would strip the Boards of Election of their statutory authority and the schemes outlined by statute intended to address issues in an election. That is not the

6

intent of vacancy provisions. This is wholly an issue that is to be addressed by the State Board under its authority. Thus, under these circumstances, the State Board should use the authorities outlined in sections 1 and 2, above, to prevent an unresolvable stalemate.

## CONCLUSION

Beth Tanner was the only valid candidate on the relevant ballot for District 10-F (Seat 2). As such, she is no different than the sole candidate in District 10-F (seat 3) or any other Wake Superior and District court election this cycle: she ran unopposed and should be certified as the winner. The State Board's statutory authority to take this action is manifest and stands to go unchallenged. Under these circumstances, a new election is not necessary and no executive authority exists to properly fill the seat.

7

Case 5:21-cv-00014-D   Document 1-3   Filed 01/12/21   Page 7 of 8

Respectfully submitted, this the 16th day of December, 2020.

/s/ Josh Howard
Josh Howard
NC Bar No. 26902
Gammon, Howard & Zeszotarski, PLLC
PO Box 1127
Raleigh, NC 27602
(919) 521-5878
Fax: (919) 882-1898
jhoward@ghz-law.com
Counsel for Beth Tanner